Jennifer Ruth Edwards

     v.

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration

Civil No. 17-cv-232-AJ
Opinion No. 2018 DNH 046

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Jennifer Edwards moves to
reverse the decision of the Acting Commissioner of the Social
Security Administration ("SSA") to deny her applications for
Social Security disability insurance benefits, or DIB, under
Title II of the Social Security Act, 42 U.S.C. § 423, and for
supplemental security income, or SSI, under Title XVI, 42 U.S.C.
§ 1382. The Acting Commissioner, in turn, moves for an order
affirming her decision. For the reasons that follow, this
matter is remanded to the Acting Commissioner for further
proceedings consistent with this Order.

## I. **Standard of Review**

The applicable standard of review in this case provides, in

pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §

405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . .

benefits unless 'the [Acting Commissioner] has committed a legal

or factual error in evaluating a particular claim.'"  Manso-

Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per

curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting

Commissioner's findings of fact be supported by substantial

evidence, "[t]he substantial evidence test applies not only to

findings of basic evidentiary facts, but also to inferences and

conclusions drawn from such facts."  Alexandrou v. Sullivan, 764

F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,

360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial

evidence is 'more than [a] mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d

2

594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts."  Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).  Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole."  Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).


## II. **Background**

The parties have submitted a Joint Statement of Material Facts (doc. no. 15), which is part of the court's record and will be summarized here, rather than repeated in full.

Edwards has been diagnosed with, and has received treatment for, a variety of physical and mental impairments.  These include degenerative disc disease, for which she had two

surgeries (in July 2009 and January 2014), and osteoarthritis in her left knee, for which she had a total knee replacement (in August 2013).  It is sufficient to say that Edwards' treatment history is extensive.  <u>See</u> Joint Statement (doc. no. 15) 1-16.

Edwards first applied for DIB and SSI in February 2012, claiming that she had been disabled since June 6, 2009, as a result of failed lower back surgery, bipolar disorder, depression, and extreme anxiety.  In April 2012, Edwards' physical residual functional capacity ("RFC")[1] was assessed by a single decision maker ("SDM"), <u>i.e.</u>, an SSA "employee with no medical credentials," <u>Stratton v. Astrue</u>, 987 F. Supp. 2d 135, 138 n.3 (D.N.H. 2012) (quoting <u>Goupil v. Barnhart</u>, No. 03-34-P-H, 2003 WL 22466164, at *2 n.3 (D. Me. Oct. 31, 2003)).  After reviewing Edwards' medical records, the SDM determined that she could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk (with normal breaks) for a total of about two hours in an eight-hour workday, sit (with normal breaks) for about six hours in an eight-hour workday, and push and/or pull the same amount she could lift and/or carry.  The SDM also determined that Edwards had no manipulative, visual, communicative, or environmental limitations, and could

---

[1] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

occasionally perform each of the postural activities (climbing ramps and stairs; climbing ladders, ropes, and scaffolds; balancing; stooping; kneeling; crouching; and crawling).

In addition to the SDM's RFC assessment, the record also includes multiple statements from medical sources that touch on various aspects of Edwards' physical and mental RFC. Three of those statements are relevant to Edwards' appeal.

First, in June 2013, Dr. Melissa Hanrahan, Edwards' treating physician since November 2005, completed a form that asked her to assess Edwards' non-exertional and/or psychological limitations.

Second, in April 2015, Dr. Frank Graf reviewed Edwards' medical records,[2] gave her an orthopedic consultative examination, and wrote a report on the examination.[3] In his report, he made the following diagnosis:

> Chronic lumbosacral pain, chronic regional pain syndrome, continued opiate dependency, failed laminotomy discectomy, and interbody fusion L5-S1 with chronic regional lumbosacral pain. Status post left total knee replacement with instability at the left knee and chronic atrophy of the left thigh; depression and bipolar disorder with no current suicidal or

---

[2] Specifically, Dr. Graf mentioned eight different medical records produced by approximately a half dozen providers and identified a wide range of medical findings, diagnoses, and treatments.

[3] "A consultative examination is a physical or mental examination or test purchased for [a claimant] at [the SSA's] request." 20 C.F.R. §§ 404.1519 & 416.919.

homicidal ideation, but past history of
hospitalization.

Tr. 793.[4]

In addition to writing a report, Dr. Graf also completed a
Medical Source Statement of Ability to Do Work-Related
Activities (Physical). In it, he opined that Edwards could:
lift up to 20 pounds occasionally, carry up to 10 pounds
occasionally, sit for one hour at a time without interruption,
stand for 30 minutes at a time without interruption and for 15-
30 minutes total in an eight-hour workday, and walk for 20
minutes at a time without interruption and for 15 minutes total
in an eight-hour workday.[5] He further stated that when Edwards
was not sitting, standing, or walking, she needed to recline.
He went on to opine that Edwards could never reach overhead with
either hand, but could occasionally perform all other forms of
reaching, and could perform handling, fingering, feeling, and
pushing/pulling with either hand occasionally. He also opined
that Edwards could occasionally use either foot to operate foot

---

[4] Laminotomy is "[e]xcision of a portion of a vertebral lamina
resulting in enlargement of the intervertebral foramen for the
purpose of relieving pressure in a spinal nerve root."
Stedman's Medical Dictionary 1046 (28th ed. 2006). Discectomy
is "[e]xcision, in part or whole, of an intervertebral disk.
Id. at 550.

[5] While Dr. Graf indicated that Edwards could sit for one hour at
a time without interruption, he did not check any of the boxes
designating responses to a question about the total amount of
time she could sit during an eight-hour workday.

controls.  With regard to postural activities, Dr. Graf opined

that Edwards could never climb ladders or scaffolds, kneel,

crouch, or crawl, but that she could occasionally climb stairs

and ramps, balance, and stoop.  He found no hearing or vision

limitations.  With respect to environmental limitations, he

found that Edwards could never tolerate exposure to unprotected

heights, moving mechanical parts, or vibrations, but could

occasionally tolerate operating a motor vehicle, humidity,

wetness, dust, odors, fumes, pulmonary irritants, extreme cold,

and extreme heat.  Finally, Dr. Graf opined that Edwards could

not travel without a companion for assistance, walk a block at a

reasonable pace on rough or uneven surfaces, or use standard

public transportation, but he also opined that she could perform

six other activities of daily living.

Third, at the November 10, 2015, hearing on Edwards'

applications,[6] the Administrative Law Judge ("ALJ") took

testimony from Dr. John Kwock, a board certified orthopedic

surgeon who reviewed Edwards' medical records but who had

neither treated nor examined her.  With respect to exertional

limitations, Dr. Kwock gave the following testimony:

> [I]t's my opinion that she is still capable of doing
> light work.  That is to say she can lift and carry up
> to 10 pounds on a frequent basis, 11 to 20 pounds on

---

[6] This was the second hearing on Edwards' applications, but there
is no need for the court to further describe the procedural
history of her case.

7

an occasional basis, 21 to 50 pounds never. As far as
sit, stand, walk is a concern, again, most of her back
problem is limited to L4, 5, L5, S1 so although she
still may have that irritation. It's my opinion that
she still can sit for six out of the eight, that she
can stand for four hours out of the eight and walk for
two hours out of the eight. Posturals I believe are
appropriate and the lower extremities climbing ramps
and stairs occasional, climbing ladders, ropes and
scaffolds, never, balancing, occasional, stooping
occasional, kneeling, never, crouching, never,
crawling, never, upper extremity posturals are
reaching waist to chest continuous, reaching above
shoulder occasional, handling, continuous, fingering
continuous, feeling is continuous.

Tr. 113-14. Dr. Kwock identified two environmental limitations,

i.e., a need to avoid "high exposed areas," Tr. 115, and a need

to avoid "proximity to moving mechanical parts," id.

    After Edwards' hearing, the ALJ issued a decision that

includes the following relevant findings of fact:

    5. After careful consideration of the entire record,
    the undersigned finds that the claimant has the
    residual functional capacity to perform light work as
    defined in 20 CFR 404.1567(b) and 416.967(b) in that
    she could occasionally lift and carry up to twenty
    pounds and frequently lift and carry up to ten pounds;
    she could sit for a total of six hours out [of] an
    eight-hour day with normal breaks, stand for four
    hours out of an eight-hour day with normal breaks and
    walk for two hours out of an eight-hour day with
    normal breaks. Additionally, she could not climb
    ladders, ropes, or scaffolds and could not crawl,
    crouch or kneel. She could occasionally stoop,
    balance and climb stairs and ramps. She could
    occasionally reach overhead. She has no limitations
    on other manipulative activities. She would not be
    able to be exposed to unprotected heights and would
    have to avoid dangerous moving machinery. In
    addition, she could perform uncomplicated tasks
    (meaning tasks that typically can be learned in thirty
    days or less) and she could maintain concentration,

persistence and pace for two-hour blocks of time
throughout the workday.

Tr. 34.

At Edwards' hearing, the ALJ posed a hypothetical question

to a vocational expert ("VE") that incorporated the RFC recited

above, along with Edwards' age, education, and work experience.

According to the VE, a person with those characteristics would

be able to perform the light-duty jobs of cashier II, ticket

taker, and price marker and the sedentary jobs of election

clerk, document preparer, and charge-account clerk. But, the

ALJ went on to stipulate that if she adopted the limitations in

Dr. Graf's Medical Source Statement, that would result in a

finding that Edwards was disabled. Moreover, given the other

opinions that Dr. Graf gave in his Medical Source Statement,

there can be no doubt that when the ALJ said that adopting Dr.

Graf's opinion would result in a finding of disability, she was

referring to Dr. Graf's opinions on Edwards' capacities for

sitting, standing, and walking.[7]

---

[7] The limitations on sitting, standing, and walking must have
been the deal-breaker because Dr. Graf's limitations on lifting
and carrying would not preclude sedentary work, see 20 C.F.R. §§
404.1567(a) & 416.967(a), and there is no VE testimony to
suggest that any of the other limitations in Dr. Graf's
statement would preclude work.

## III. **Discussion**

### A. **The Legal Framework**

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. § 423(a)(1)(A)-(D). To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The question in this case is whether there is substantial evidence to support the ALJ's determination that Edwards was not under a disability from May 6, 2009, through December 16, 2015.

To determine whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. §§ 404.1520 (DIB) & 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20
C.F.R. § 416.920).

The claimant bears the burden of proving that she is
disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She
must do so by a preponderance of the evidence. See Mandziej v.
Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.
Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)). Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) [claimant]'s
> subjective claims of pain and disability as supported
> by the testimony of the [claimant] or other witness;
> and (3) the [claimant]'s educational background, age,
> and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797
F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690
F.2d 5, 6 (1st Cir. 1982)).

**B.    Edwards' Claims**

Edwards claims that the ALJ's RFC assessment is not
supported by substantial evidence because the ALJ made four
errors in evaluating the medical-opinion evidence: (1) giving
either "no weight," Tr. 32, or "little weight," id., to the
opinions in Dr. Hanrahan's non-exertional limitations form; (2)
giving "little weight," Tr. 42, to the opinions in Dr. Graf's
Medical Source Statement; (3) giving "some weight," Tr. 44, to
the administrative findings made by the SDM; and (4) giving

11

"greatest weight," Tr. 44, to the opinions expressed by Dr. Kwock at Edwards' hearing.  Edwards' second claim is persuasive and dispositive.  In this section, the court begins by discussing the applicable legal principles, then turns to the ALJ's assessment of Dr. Graf's opinions, and concludes with several observations that the SSA may wish consider on remand.

1. Legal Principles

The SSA is required to evaluate every medical opinion that it receives.  See 20 C.F.R. §§ 404.1527(c) & 416.927(c). Moreover, the Social Security regulations describe a hierarchy of medical opinions that generally favors those from treating sources, gives lesser weight to those from sources who have only examined a claimant, and gives the least amount of weight to opinions from sources who have neither examined nor treated a claimant.  See 20 C.F.R. §§ 404.1527(c)(1)-(2) & 416.927(c)(1)-(2).  In weighing any medical opinion, the SSA, and by extension an ALJ, should consider: (1) the length of the medical source's treatment relationship with the claimant, if any, and the frequency of his or her examination of the claimant, if any; (2) the nature and extent of the claimant's treatment relationship with the medical source; (3) the opinion's supportability; (4) the opinion's consistency with the record as a whole; (5) the specialization of the medical source who provided the opinion; and (6) other factors.  See 20 C.F.R. §§ 404.1527(c)(2)-(6) &

12

416.927(c)(2)-(6).

    2.  Dr. Graf's Opinions

    Here, the ALJ found that the opinions in Dr. Graf's Medical
Source Statement were "not persuasive," Tr. 42, and, as a
consequence, she accorded them "little weight," Tr. 43.  She
offered several reasons for discounting Dr. Graf's opinions,
including these: (1) Dr. Graf's "limitations regarding sitting,
standing and walking are contradictory," Tr. 42, and "his report
does not explain his contradictory statements," id.; (2) Dr.
Graf's limitations on sitting, standing, and walking are
unsupported by his report on the examination he gave Edwards;
and (3) "[c]onsidering that the claimant reports spending a fair
amount of her time sitting, it is not clear why Dr. Graf limits
her to just one hour of sitting, or why he limits her to just
fifteen to thirty minutes of standing and walking, yet states
that she does not require any assistive devices for ambulation,"
id.[8]  While it is perhaps a close call, the court concludes that
the ALJ's reasons for discounting Dr. Graf's opinions on

_____

    [8] The ALJ also criticized as unsupported Dr. Graf's opinions
that Edwards "cannot travel without accompaniment, cannot use
public transportation, can tolerate only a moderate level of
workplace noise, cannot reach overhead at all with either upper
extremity and can only occasionally use her arms and hands for
gross and fine motor movements."  Tr. 42.  Because the ALJ's
unsupported rejection of Dr. Graf's opinions on Edwards'
capacities for sitting, standing, and walking was a reversible
error, there is no need to address the ALJ's rejection of Dr.
Graf's opinions on these other matters.

Edwards' capacities for sitting, standing, and walking are not supported by substantial evidence.

To begin, the court acknowledges the confusion created by the manner in which Dr. Graf responded to the questions on the Medical Source Statement form concerning Edwards' capacities for sitting, standing, and walking. Obviously, it was illogical for him to say that Edwards could stand for 30 minutes at a time, but could only stand for 15 to 30 minutes a day, and it was equally illogical for him to say that Edwards could walk for 20 minutes at a time, but could only walk for 15 minutes a day. Presuming that the illogical findings reported on the form are not what Dr. Graf actually had in mind, it would seem reasonable to resolve the confusion by concluding that Dr. Graf merely transposed his responses, listing his "at one time" answers in the spaces for the "total per day" answers, and vice versa. Notwithstanding the confusion created by the manner in which Dr. Graf filled out his Medical Source Statement, the ALJ understood that statement well enough to stipulate that if she found Dr. Graf's opinions on Edwards' capacities for sitting, standing, and walking to be supported, "that would result in a finding of disability," Tr. 141. Because the ALJ understood Dr. Graf's Medical Source Statement well enough to say that it expressed opinions that, if adopted, would establish disability, the confusing manner in which Dr. Graf completed that form is not

substantial evidence to support the ALJ's rejection of Dr.
Graf's opinions on Edwards' capacities for sitting, standing,
and walking.

The ALJ also discounted Dr. Graf's opinions because, in her
view, they were not supported by the report he prepared after he
examined Edwards.  Lack of evidentiary support is a valid reason
for discounting a medical opinion.  See 20 C.F.R. §§
404.1527(c)(3) & 416.927(c)(3) ("[t]he more a medical source
presents relevant evidence to support a medical opinion,
particularly medical signs and laboratory findings, the more
weight we will give that medical opinion").  However, the ALJ's
determination that Dr. Graf's opinion was ill supported is,
itself, not supported by substantial evidence.

This is how Dr. Graf characterized the findings from his
physical examination of Edwards:

> Lumbosacral and lower extremity examination performed.
> At the left knee there is a 14 cm anterior incision.
> Difficult for total knee arthroplasty.  There is full
> extension to 108 degrees of flexion.  There is pain on
> palpation at the inferior pole of the incision
> overlying the tibial tubercle.  There is 2+
> anteroposterior laxity at the left knee.  There is an
> atrophy of the left thigh measuring 49 cm left thigh
> versus 52 cm right thigh.  There is an increased
> circumference at the left knee 41 cm versus 39 on the
> right.  At the right knee there is a prominent patella
> crepitation.  The right tendo Achilles reflex is
> absent.  Sitting, supine, lying, straight leg raise
> elicits low back pain.  There is a 14 cm lumbosacral
> incision present at the low back.  There are marked
> restrictions in lumbosacral ranges of motion.  In
> standing position 7 degrees, sacrum -13 degrees T12,

> forward bend 17 degrees, sacrum +2 degrees, T12 10
> degrees, left lateral bend, 16 degrees of right
> lateral bend, extension -1 degrees sacrum, -19 degrees
> T12.  There is weakness on ankle pivots at the right
> ankle in dorsiflexion, plantar flexion, and the
> patient cannot heel walk consecutively because of both
> weakness and increased low back pain.  Side lying
> examination of the lumbosacral spine elicits a marked
> pain reaction at the L5 and L4 segmental levels.

Tr. 793.[9]  The court does not pretend to understand all the

medical terminology in Dr. Graf's examination report, but apart

from making a conclusory statement that Dr. Graf's opinions were

not supported, the ALJ said nothing about how the foregoing

examination findings do not support Dr. Graf's opinions on

Edwards' capacities for sitting, standing, and walking.

Accordingly, the ALJ's finding that Dr. Graf's opinions on those

capacities lacked support in his examination report is, itself,

not supported by substantial evidence.

Finally, the ALJ discounted Dr. Graf's opinion on Edwards'

capacity for sitting because it was inconsistent with claimant's

reports that she spends "a fair amount her time sitting," Tr.

42.  Inconsistency with the record as a whole is a valid reason

for discounting a medical opinion.  See 20 C.F.R. §§

404.1527(c)(4) & 416.927(c)(4) ("the more consistent a medical

opinion is with the record as a whole, the more weight we will

---

[9] Crepitation is "[n]oise or vibration produced by rubbing bone
or irregular degenerated cartilage surfaces together as in
arthritis and other conditions."  Stedman's, supra note 4, at
457.

give that medical opinion"). However, the ALJ's determination that Dr. Graf's opinion was inconsistent with the record as a whole is not supported by substantial evidence.

The ALJ faulted Dr. Graf for limiting Edwards to just one hour of sitting when "she report[ed] spending a fair amount of her time sitting," Tr. 42. But the ALJ did not support that statement with any citation to evidence that documents reports by Edwards that she spent a substantial amount of time sitting. And at her hearing, Edwards gave testimony that was quite consistent with Dr. Graf's opinion. When the ALJ asked Edwards to explain why she believed she could not work, she responded: "I have a lot of trouble sitting for more than 30 minutes." Tr. 89. Later in the hearing, the following exchange took place between Edwards and her counsel:

> Q.   How much of your time during the day do you spend reclining?
>
> A.   I would say a good 80 to 90 percent of my time.
>
> Q.   When you recline do you just lie on a couch? Do you lie in bed?
>
> A.   I have a recliner on my couch and that's where, either that or I'll put my feet up on the couch so that I'm more even.

Tr. 99. If one accepts the proposition that reclining and sitting are two different things, then the foregoing testimony is: (1) entirely consistent with Dr. Graf's opinion that Edwards

had a severely limited capacity for sitting; and (2) diametrically opposed to the ALJ's statement that Edwards had reported that she spent "a fair amount of her time sitting," Tr. 42. The Acting Commissioner contends, in reliance upon the exchange quoted above, that "the ALJ explicitly acknowledged Plaintiff's allegation that she 'often sits in a recliner or puts her feet up,'" Resp't's Mem. of Law (doc. no. 16-1) 18, but, clearly, Edwards testified that she <u>reclined</u> in her recliner/couch 80 of 90 percent of the day, not that she <u>sat</u> a "fair amount" of the time. In other words, both the ALJ and the Acting Commissioner have misconstrued Edwards' testimony. Because the ALJ identified no evidence that supports her rejection of Dr. Graf's opinion, her rejection of that opinion is, necessarily, not supported by substantial evidence.

To sum up, the ALJ gave three reasons for discounting Dr. Graf's opinions on Edwards' capacities for sitting, standing, and walking. None of the three is supported by substantial evidence. Given the ALJ's own stipulation that adoption of Dr. Graf's opinions on Edwards' capacities for sitting, standing, and walking would result in a finding of disability, remand is required.

3. <u>Other Matters</u>

Because this case is being remanded as a result of the manner in which the ALJ evaluated Dr. Graf's opinions, there is

no need to fully address Edwards' other claims of error. There are, however, several problems with the ALJ's decision that should probably be addressed on remand.

First, in her decision, the ALJ called Dr. Graf's "statements concerning [Edwards'] specific limitations . . . contradictory and, at times, illogical," Tr. 42, and the Acting Commissioner argues that "[t]he fact that Dr. Graf plainly made a mistake by opining that Plaintiff could walk for fewer minutes total than he [sic] walk at a time casts doubt on the reliability of the rest of Dr. Graf's opinion," Resp't's Mem. of Law (doc. no. 16-1) 17. In that same spirit, the court notes that over the course of two pages of her decision, the ALJ wrote: (1) "she [i.e., Edwards] has never been hospitalized for psychiatric reasons," Tr. 28; (2) "she has never been psychiatrically hospitalized," id.; (3) "she had experienced depressive episodes all her life that never interfered with her ability to work until she had her third child and was briefly hospitalized for three days," id.; and (4) "[s]he described . . . . her prior brief hospitalization for depression many years ago," Tr. 29. The ALJ's discussion of Edwards' history of psychiatric hospitalization is at least as contradictory as Dr. Graf's attempt to complete the Medical Source Statement form.

Similarly, the ALJ referred to "the administrative findings of fact made by the state agency non-examining medical

19

physician," Tr. 44,[10] when, in fact, the findings at issue were
not made by a "medical physician," but were made by an SSA
"employee with no medical credentials," Stratton, 987 F. Supp.
2d at 138 n.3.  The Acting Commissioner acknowledges the ALJ's
error, and attempts to brush it off as harmless, but following
the Acting Commissioner's own line of reasoning, the ALJ's
error, even if substantively harmless, still casts doubt on the
reliability of the rest of her decision.

In addition, apparently following Dr. Kwock's lead, the ALJ
stated that Dr. Graf was the only physician who noted atrophy in
Edwards' left thigh, see Tr. 43, 118, and was the only physician
who noted an absence of a right ankle reflex, see Tr. 44, 117.
However, it is unclear how the number of physicians who made
those findings has any bearing on any issue in this case.  To be
sure, the applicable regulations provide that when an ALJ
evaluates a medical opinion, she should take into account the
degree to which that opinion is supported by medical evidence,
see 20 C.F.R. §§ 404.1527(c)(3) & 416.927(c)(3).  But the court
is aware of nothing in the regulations that would encourage or
even permit an ALJ to evaluate a medical finding based upon the
degree to which it is corroborated by findings made by other
physicians, and if the ALJ's point is to call into question the

---

[10] The ALJ also referred to the SDM as "a non-examining and non-
treating expert source."  Tr. 44.

validity of Dr. Graf's atrophy and reflex findings, she does not
say so.  And plainly, if a patient developed a medical condition
in 2015, a medical note describing that condition in 2016 is not
rendered less reliable by the fact that medical notes made in
2014 do not mention the condition.  In short, it does not appear
that the ALJ's discussion of Dr. Graf's examination findings
added anything of value to her decision.

Finally, the court notes that while the applicable
regulations list six factors that the SSA, and ALJs, should
consider when evaluating medical opinions, see 20 C.F.R. §§
404.1527(c)(2)-(6) & 416.927(c)(2)-(6), the ALJ's evaluation of
Dr. Kwock's opinion is limited to this: "greatest weight is
accorded to Dr. Kwock's opinion, as he had the benefit of
reviewing the entire body of medical evidence on the record,"
Tr. 44.  However, Dr. Kwock testified on November 10, 2015, just
over six months after Dr. Graf wrote a report that listed a
rather substantial set of medical records that he had reviewed,
see Tr. 792, and the ALJ identified no specific medical records
that Dr. Kwock reviewed that Dr. Graf did not.  Accordingly, Dr.
Kwock's access to "the entire body of medical evidence on the
record," Tr. 44, does not necessarily distinguish Dr. Kwock's
opinion from Dr. Graf's, and thus, it does not appear to be
substantial evidence that would support the ALJ's decision to
credit Dr. Kwock's opinion over Dr. Graf's.

## IV. <u>Conclusion</u>

For the reasons given, the Acting Commissioner's motion for an order affirming her decision, doc. no. 16, is denied, and Edwards' motion to reverse that decision, doc. no. 10, is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court shall enter judgment in accordance with this Order and close the case.

SO ORDERED.

Andrea K. Johnstone
United States Magistrate Judge

March 7, 2018

cc:  Edward A. Wicklund, Esq.
     Janine Gawryl, Esq.
     Robert J. Rabuck, Esq.